Come on up, sir. All right, Mr. Barnes. Good morning, Judge Stewart. My name is Harris Anthony Laird. This is a case out of the Jackson District before Judge Wingate. It's probably one of those things, I remember when I graduated from law school, the last thing I ever thought I'd be was a tax attorney. I took all the tax courses and swore I'd never do it again and seven years later I'm in the graduate tax program at Florida. The instructions tell us not to go to... You've been doing it for 36 years, right? Ma'am? Are you the one who's been doing it for over 36 years? Oh, gosh, yes, ma'am. In fact, I've been doing it almost 40. I graduated from Florida in 1980. I've been at this for 47 years, so it's been a while. Well, I was struck by, and I don't want to interfere with your argument, but I was struck by something said in one of your briefs that you'd never seen the IRS do this kind of thing before. I haven't. One of the things, and then I'll divert to that, as we've said in the briefs, Your Honors, we have done voluntary payments in this thing. In fact, three times we did voluntary payments for the trust fund portion. Those were accepted. Each letter said, please apply this to the trust fund portion. Who is we? Well, my firm, for Mr. Laird. For who? For Mr. Laird personally or for the company? Well, we did it for the company at the time, Judge, because... Were they personal checks of Mr. Laird? At the time, yes, sir. All those were personal checks. Well, I think the government is... There's some confusion about that. Yes, ma'am. Well, I'm not sure that that time is relevant other than to show that we paid $46,000 prior to this particular check being paid, Your Honor. This particular check was dated January the 28th, 2015. It was paid by the Bank of Franklin for approximately $149,000. The remitter was Mr. Anthony Laird. At this particular time, Judge Jones, Laird Electric had been pretty well defunct for almost three years. The only way the government was going to get any money at all was through what we call the trust fund recovery penalty or what I used to refer to as the responsible person penalty. And so that's what we were trying to do at the time, we being my law firm in conjunction with Mr. Laird. We could see that the company was in trouble, that they were... They had almost a $400,000 tax liability. And I know that the Judge is probably saying, well, how does that happen? Well, it happens with many businesses in that... They don't pay. They don't pay. Well, what happens, Judge, is that they can't borrow money from the banks, so they borrow money from their employees and from the federal government. And that's what Mr. Laird did. And he borrowed almost $400,000 over this period of time before Laird Electric finally shut down. So during this period of time, we were... We being my law firm in conjunction with Mr. Laird, made approximately $46,000 of voluntary payments. And each letter, as was reflected in the file, said, this is on behalf of Laird Electric. Apply this to the company. And those three checks back in 2000, the early 2000s, were in fact applied as instructed. They were applied to separate... Three separate quarters for a total of $46,000. So we have no issue with that other than to point out to the court that we've instructed the IRS to do this before, and they've done it. Now, I'm jumping a little bit ahead. If you've looked at our brief, you will see that the service has come out with several revenue procedures, one of which was 2002-26. In 2002-26, is the IRS saying to the taxpayers, if in fact you will make a voluntary payment, and if in fact you tell us how to allocate it, we will... Another line, will. It doesn't say shall, and it doesn't say may. It says we will allocate it in accordance with your instructions. This is not an uncommon technique, Judge Jones. We do this all the time when we see, when companies come to us, and we see that they're in trouble, and we know that because of the corporate shell, creditors, the IRS being one, cannot get to those assets if there are no assets to get. But they can get to the principal owner or the responsible person. So being a tax lawyer, I'm saying, okay, what can Mr. Laird be liable for from any creditor? You want to offset the responsible person liability. Yes, ma'am. So what we're doing is we're prepaying the trust fund penalty knowing that that assessment is coming. And so in anticipation of this assessment coming, that's exactly what we did with the first three payments. Then in 2015, and prior to that, in fact, 2014, Mr. Laird was contacted by Lynn Irvin. Lynn Irvin is a revenue officer out of Clarksdale, Mississippi, which is 200 miles away from his business, but that's where she was. And so she came and conducted what we call a trust fund interview. That's form 4180. Now in the letter that we sent, my office sent, on January the 29th, 2015, to the Internal Revenue Service, we enclosed four documents. You know what? You're going to get so down in the weeds on this, you're not going to be able to argue anything. To me, the grovelment of this to me is, does Mr. Laird individually get the refund, or were they entitled to credit it against the other company liabilities? Right? If you'll give me two more minutes, I'll get there. Okay. I'm not trying to get too far down in the weeds. But in the January 29th, 2015 letter, Your Honor, it says, Dear Lynn, Ms. Irvin, in reference to the above taxpayer, the above taxpayer was Anthony Laird, please find and close you with, check number such and such for $149,000 to be allocated to the trust fund portion only of Laird Electric. Then we have the two forms, the 4180s, where we did the responsible person interview for Mr. Laird and then for Susan Laird, his wife. But the point is, those checks, the check for $149,000 was written on his personal bank account. Yes, sir. No, ma'am. It was written by the Bank of Franklin because we got a cashier's check for that. Okay. And it says the remitter is Troy A. Laird. Okay. And that was dated January 20th, 2015. I've got the check and it was part of the record, Your Honor. Right. And so in the letter of transmittal. I didn't overlook that. Well, I think that's the reason it's so important because it says, on behalf of the reference taxpayer, Anthony Laird, I have enclosed you with the following, official check number, blah, blah, blah, in the amount of $145,000 for the payment in full of the Then it goes on with the two separate trust fund interviews. The reason that is important, Your Honor, is because you cannot have a trust fund assessment or a responsible person assessment against an individual until you have, in fact, conducted the interview. So Ms. Irvin conducted the interview of both Mr. Laird and his wife. Then the fourth document that was sent was Form 2751, proposed assessment of trust fund recovery penalty. If you'll look at Judge Wingate's findings of fact, he said, well, there was no assessment against Mr. Laird and, therefore, there was no reason for him to pay it. Therefore, it was the liability of Laird Electric, not Mr. Laird. Well, that's just patently wrong. If you will look at the documents, Judge Jones. Well, let's assume I agree with you about that. Okay. Get to the point. You only have seven minutes left. Well, but you see, the we agreed to the assessment when we sent it in. Judge Wingate said that we did not. On January the 29th, 2015, Mr. Laird signed Form 2751. And it says, I consent to the assessment and collection of the penalty shown for each period which is equal either to the amount of federal employment taxes withheld from employees' wages or to the amount of federal excise taxes collected from persons or members and which was not paid over to the government by the business named above. Named above is Laird Electric. I waive the 60-day restriction on notice and demand under the Internal Revenue Code section 6672B. We agreed to the assessment. I think the government agrees with you on that. Well, but you see, Judge, but the judge did not. I understand that. But we why are you entitled to the refund? Because the government says they made a calculation error about payments that were made back in 2006, right? Yes, ma'am. And those were monies that have been paid by Mr. Laird to defray the responsible person cost. Yes, ma'am. All right? Or obligation. And therefore, it is Mr. Laird who should get the money back and not have it credited to the defunct company. Yes, ma'am. That's your bottom line, right? Yes, ma'am. There you go. And we filed an 843 asking for that. And we showed that the assessment was against Mr. Laird. The proof is uncontradicted that Mr. Laird paid the $149,000. And the only reason there's an overpayment, Your Honor, is because of the miscalculation by the Internal Revenue Service. In fact, they sent us a subsequent notice saying, oh, by the way, you overpaid by almost $51,000. And that's why we're here. Your Honor, RevPROC 2002-26 says we can make a voluntary payment. And it says that the IRS will apply that as we instruct them. Now, their argument is that under this statute 6204, they're allowed to credit anything to anything. Well, 6204 has to do with involuntary payments and others like that. For instance, every year, Your Honor, you sign a 1040 or other businesses sign 1120s or 1120Ss. You self-assess. So if you're entitled to a refund, you get it back unless you have a tax lien or another tax liability. They're entitled to keep it. Same thing with the 1065s and the 1120s, 1120Ss. If there's an out, because that's not, you're not telling them how to allocate it. Here, Laird Electric was in default. Mr. Laird, as the responsible person, came in and said, I'm going to use Revenue Procedure 2002-26. I'm going to make a voluntary payment. And in the letter that I'm sending you, it says, here's my check. Apply it to the trust fund portion only of Laird Electric. Only trust fund portion. The IRS, if they follow their own procedure, Judge Jones, they don't have the ability to put it anywhere else. The way I look at it, it's arguably simpler than that, just because they can't take the money from the person who didn't owe the money. All right? So Mr. Laird voluntarily assumed and paid some of the, well, voluntarily paid some of the responsible person thing. And so when the calculation error was made with regard to that amount, the person who paid the money ought to get the money back. Period. And therefore, unless 6204 somehow says that the government can reallocate responsible person payments to the account of the company. Your Honor, if you read 2002-26, it makes no such reference. Well, I know. If you make a willful payment. Well, they seem to be divorcing the, that revenue ruling from 6204. And we were trying to look at cases that might arguably support their position, and we didn't find any. That's not to say there aren't any, but I hate Jack's Law. What does the IRS say? Well, we'll follow 2002-26 when it suits us, but we won't. What the government has done for years, Your Honor, is trying to get some money into the Treasury. I think what maybe you or maybe someone else has hung up on, I enter into agreements all the time, Your Honor, where it does not full pay. I enter into an installment agreement, which is a partial pay agreement. We all know when I start out, the statute of limitations is going to run out, and it's not going to full pay. I do offers in compromise that do not full pay. I do abatement requests that do not full pay. There's no difference here. The fact is the government is losing. I get that. They're losing half, but we gave them half under the condition that they follow their own stupid rules. I don't make them. I just have to play by them. I mean, if all of a sudden first base became third base and third base became, that's the way we play baseball. But right now, 2002-26 says, I make a payment. You apply it like I tell you to, and that's all you can do. And now they're saying, well, we're going to not pay attention to our own REVPROC, and we're going to keep it, and we're going to apply it someplace else. I didn't pay it for anything else. Well, a statute would arguably take precedence over a revenue procedure, would it not, or would it? This revenue procedure, Your Honor, has been there for 17 years, and it was superseding another one that's been there for even longer. Well, how long is 62-32 of whatever it was? It's been there a long time, too, Your Honor, but you know something? They knew that when they wrote the REVPROC. The code section was there. They wrote the REVPROC back in 2002 when the code section was there. If they wanted to exempt and bring that code section into play, it's real simple. We just say, you can make a willful payment, but if you screw up and we tell you the wrong number, we get to keep it because of that code section. That REVPROC, Your Honor, does not say that. And I have 33 seconds, so I'll go ahead and finish and say, I know that maybe you're hung up that he's getting money back, and we're not applying it to the debt of Laird Electric, but that's what the deal was. They told us, you come in and pay the trust fund portion. You tell us how to allocate it, and that's how we'll do it. And we did not make the mistake, Your Honors. The IRS made the mistake. So now what they're saying, we made the mistake. We gave you a figure of $145,337.51 on this notice. That's what we told you you owed. Oh, shucks. We were wrong by $51,000. To what extent has this process become totally automated? I mean, you know, I know what the statute says in the rules is it becomes so automated that even though you're sending it in, it's a machine that's really taking a check as opposed to ---- Your Honor, this came from Mrs. Irvin. This is issued by her office. This is not part of the ACS collection system. This came from Lynn Irvin. This is what you owe. And then they said, oh, shucks, we get to keep the extra $51,000. If you want to keep voluntary compliance, you've got to give us the same rules all the time. Thank you, Your Honor. All right. Thank you, Mr. Barnes. Very helpful. You've got rebuttal time saved. All right. Mr. Killamas, do you want to enlighten us? Thank you, Your Honor. May it please the Court, Jeff Killamas for the United States. For purposes of this appeal, there are basically two categories of tax payments that Mr. Laird could potentially recover. There's approximately $60,000 of payments that were made between July of 2006 and October 2014 that were applied to the second quarter of 2006, and then there's a $145,000 payment that was made later in January of 2015. Mr. Laird does not have standing to recover any portion of the first $60,000 of payments because exhibits attached to his pleadings show that it was the company, Mr. Laird's company, not Mr. Laird, that made those payments, that made all such payments for which a refund suit would be timely. Nor is Mr. Laird entitled for refund of any portion of the later $145,000 payment for two reasons. Initially, Mr. Laird's administrative claim only sought a refund of payments transferred from the second quarter of 2006 to other quarters. Not a single penny of the $145,000 payment was ever applied to the second quarter of 2006, much less transferred from the second quarter of 2006 to other quarters. Moreover, Mr. Laird's argument that he's entitled to a refund of a portion of the $145,000 payment is really predicated on an estoppel theory, and Mr. Laird has not pled facts. It's clearly not predicated on an estoppel theory. I couldn't disagree with you more about that. Okay, Your Honor, let me try to explain. Yes, please explain the rest of it. Sure. So the only payments that Mr. Laird alleges that he made, as opposed to what the company made, is the $145,000 payment. None of the $145,000 payment was ever applied to the second quarter of 2006, and no portion of that $145,000 was ever applied to the non-trust fund portion of the company's liabilities. What was it applied to? It was applied to the trust fund portion of the company's liabilities. You mean the responsible person? The trust fund portion, it was a proposed— The part that he was personally responsible for. That's correct, Your Honor. Okay. And it was applied to that per his instructions. Right. The IRS proposed $145,000 that he would be personally liable for. The IRS applied that $145,000 to those outstanding trust funds. But the IRS miscalculated the amounts that were owed. That's correct. Based on the allegations in the complaint, that's correct. And so the IRS— Well, the IRS admitted there was 50—I mean, then they offset, so the IRS clearly miscalculated something. And the payments that the IRS ultimately offset, that it transferred from the second quarter of 2006 to other quarters, are payments that, with respect to all payments which are timely, are payments that the company made. The company made the payments that were applied to the second quarter of 2006. Well, the company made all the payments. The company, rather, didn't make all the payments. Well, the 2014 payments, Your Honor, we submit that the company did make those payments. And we submit that that was evidenced by the exhibits attached to Mr. Laird's pleadings. Each of the payments made in 2014 was attached— But he said that the company had been defunct for several years by the time, you know, they were making these back payments in anticipation. And he said, credit those to the trust fund liability. I'm not sure entirely what he means by defunct. There's no evidence in the record as to when the business went out of existence. And, in fact, if you went to the Mississippi Secretary of State's website today, the company is still in good standing with the state of Mississippi, has made corporate filings as recently as February of this year. The company made an administrative refund— That's not in the record, is it? No, Your Honor. Well— That is in the record. The company existed as a corporate entity at least as of September of 2015. And we're talking about payments that were made in 2014. That's not in the record either, is it? That is in the record, Your Honor. Okay. The company's administrative claim is attached to Mr. Laird's amended complaint. Okay. And, in fact, in the company's administrative claim, it identifies itself as a source of each payment that was made in 2014. This is at pages 976 to 978 of the record. But let me— I mean, you heard my theory as I understood what was going on here. And am I correct that the IRS takes the position that it was entitled to— First of all, to what extent can the IRS say that the $45,000 was payment made by the company? You're saying that that is something that was— But I thought he said that those payments were made with a direction to offset the trust fund liability. That's correct, Your Honor. For which he would be personally responsible. But anyway, okay. So those $45,000—$46,500. Okay. And it is in those payments or those quarterly liabilities that IRS miscalculated, right? That's correct. Yes. The $46,500 was applied in the second quarter of 2006, and there was an assessment of $28,000 that was later abated for the second quarter of 2000. All right. So your basic argument is because you say that the company made the $46,500 payment and it was offset company liability, that that gives IRS the authority to reallocate or credit an offset under— Is it 3204 or 6402? 6402. Sorry, 6402. Correct, Your Honor. But so my theory was that if these payments were made by Laird individually, that the IRS could not reallocate what he paid individually to offset the company liability. Is that not correct? That's correct, Your Honor. If Mr. Laird had made the $46,500 of payments in 2014, which we don't think that's what the exhibits show, but if he had made those payments, then Section 6402 would not authorize the IRS to take his overpayment— Then why are we getting into all the rest of these long, extended arguments? It's just been wrapped around the axle factually, it seems to me. Yes, Your Honor. It's a little complicated, but still. It's somewhat difficult to follow the complaint because of the way it's framed in terms of not identifying who made the specific payments, but we think that is the control. Well, the checks, yes, but you even, you being IRS, even took issue with whether the $145,000 had been made by Laird individually, but it seemed to me pretty darn clear from reading the documents in the transmittal letter that he was paying them individually. I think that's probably a reasonable inference to draw. Yeah, that's a real reasonable influence, yeah. Yes, Your Honor. But you took issue with that in your brief, so when you overplay things, it makes one suspicious. I apologize, Your Honor. We're trying to make this clear from a record that isn't entirely clear. Just looking at the allegations in the complaint, I apologize if we did anything that was overreaching. Was the IRS's focus on whose account or name made the payments? In other words, if it was on the company checks versus his check or notwithstanding the source of the check, but the instructions that were given. Well, the source of the payment is what controls for purposes of 6402. These are all cashier's checks, so they don't identify that it's the bank account of Mr. Laird or the bank account of the company, but there are three letters that accompany each of the payments that are made in 2014, and each of those letters, pages 671, 674, 677 of the record, say that the payments are being remitted on behalf of Laird Electric Company, and then the Laird Electric Company, when it submits its administrative refund claim, pages 976 and 978 of the record, it says, those are our payments. We made those payments. We are entitled to a refund of those payments. We think that those 2014 payments were made by the company. There's no allegation. Mr. Laird has not alleged that he made those payments. He didn't allege that, and the exhibits he attached to his amended complaint show that it was not him who made those payments. Therefore, under Section 6402, when there was an overpayment that was created, an overpayment as opposed to a partial payment, and this is a distinction that's drawn by the 11th Circuit in Ryan, when there's an overpayment under Section 6402, the IRS can apply it to any other outstanding liabilities of the person who submitted the payment. Here, that was the company, and so the IRS transferred the company's overpayment to other outstanding liabilities of the company. We think that was an appropriate exercise of Section 6402. Now, Mr. Laird has said, well, that's true, but the only reason an overpayment existed is because of a mistake by the IRS. The Supreme Court in Jones said that an overpayment exists whenever a payment is made in excess of that which is properly due. And it specifically said that can be a result of a mistake that's made by a taxpayer. It can be the result of a mistake that's made by the IRS. It can be the result of a mistake that's made by both. But whenever an overpayment exists as a matter of law, Section 6402 and the accompanying regulation give the IRS the authority to apply that to other outstanding tax liabilities of the person who made the payment. And for those 2014 payments, that person who made the overpayment is the company. To what obligations were the... was the $146,000... $149,000 applied? Yes, Your Honor, the $145,000 was applied to the trust fund portions of tax periods beginning with the third quarter of 2006 and going forward, not the second quarter of 2006. So the third quarter of 2006 forward, there may be one tax period between the third quarter of 2006 and the last quarter of 2010 for which there was not an outstanding trust fund balance, but it's pretty much all the quarters from the third quarter of 2006 through the last quarter of 2010. The $145,000 was remitted to pay the trust fund portion that was outstanding at that time, and that's what the IRS did with it. But you take the... acknowledge error or mistake is inconsequential insofar as the ultimate ability of the IRS to apply the offset. That's correct, Your Honor. We think that that's the result that's dictated by the statutory text, by the regulatory text, and by the Supreme Court's decision in Jones. It doesn't matter why an overpayment was made by the company. Once there is an overpayment, the IRS can apply that overpayment to any other outstanding liabilities of the person who made the payment here at the company. That's pretty strong. I'm sorry, Your Honor? You said, that's pretty strong. You can make the error, but it doesn't adhere to your detriment. Sort of a gotcha, but anyway. Jones was decided in 1947. If Congress didn't like the way that that decision was rendered, certainly in the intervening 70 years or so, it could have overruled Jones. It could have written the statute to say, well, if the IRS makes a mistake, that's no longer considered an overpayment. That's no longer something that the IRS can set off against other outstanding liabilities of the payor. It hasn't done so. The statute remains in force. Anytime there's an overpayment, it can be applied and credited against other outstanding liabilities of the person who remitted the payment. And we would submit, the company isn't a party to this suit. The company could have filed this suit on its own behalf and said, we are entitled to the overpayment. It didn't do that. Mr. Laird is coming in and saying, don't worry about the company's outstanding liabilities. Don't worry about who made this payment in 2014. I want the money personally, notwithstanding the fact that the company still owes over $200,000 in employment taxes. The company, there's a reason why the company didn't file this suit. It's because it knows that it would not receive a refund check. Well, he knows that. I mean, he's a responsible lawyer. Responsible person, responsible lawyer, whatever, but... Yes, Your Honor. We think that ultimately this comes down to a question of who is entitled to obtain a refund of the payments that were made in 2014, because that's what Mr. Laird's refund claim spoke to. Mr. Laird's refund claim spoke to payments that were transferred from the second quarter of 2006 to other quarters. Those payments, all such payments for which a refund claim would be timely were made by the company, were not made by Mr. Laird. He's never alleged to the contrary. He's never made an allegation that he was the one who made those payments. Therefore, the offset under Section 6402 was proper. If there are no further questions... Your bottom line is he's owed nothing. Correct, Your Honor. That's our position. Okay. I think we got it. Thank you. Thank you. Mr. Barnes? I didn't think I had any more time, but since I do, I will make just a few comments, Your Honor. First of all, I haven't read the Jones case in quite a while, but my remembrance of the Jones case, Your Honor, had to do with an overpayment with no directions as to how the payment was to be allocated. Now, 2002-26 comes, what, 50 years later? The IRS knew about the Jones case. Well, let me ask you. The point is this. The person who paid the gold gets the gold back on variation of the old one. Yes, ma'am. Okay. So, their argument is that these three payments for $46,500 were payments made by the company. Yes, ma'am. And therefore, if there was a miscalculation, then it was the company and its liability that kicked in for offset under 6402. Well, but you see also, those payments were all made under the same criteria, Judge Jones, to allocate them only to the trust fund. I understand that, but I'm not sure they were also That doesn't mean the company's not liable for them initially. Right? The company was allowed for 100% initially. Right. That's perhaps your problem. And were those three checks for $46,500 financed by Mr. Laird individually or by Laird Electric? I don't think there's any proof of that, Your Honor. I don't know. You don't know? Well, don't you think that's sort of the critical thing? I mean, to me, that's sort of the critical thing. Well, it's part of the critical thing, Your Honor, except for the fact that those payments would only be allocated to trust fund portions, not to anything else. But if they were company checks, the company didn't have the right to do that, did it? Oh, yes, ma'am. Everybody can make a payment until it has to be allocated. We do that all the time, Your Honor. But then if there wasn't but then it doesn't matter because if the company paid the gold, then and it was it doesn't matter to whom they ordered the allocation because the IRS, having miscalculated, can come back and say we're applying it to another liability of the company. That's my point. Yes, ma'am, but they didn't have the right to do that. Well, you're saying the revenue ruling prevents them from doing that. Yes, ma'am. Jones 6402 does not, in my opinion, overrule that because and the Jones case doesn't overrule that because 2002-26 is their revenue procedure, Your Honor, and we followed it. We did exactly what they told us to do. And now they can't, as Judge Stewart said, they can't just do a gotcha because that's what they're doing. Oh, by the way, we messed up, so therefore you paid this $145,000. We're just going to keep that plus everything else. Each of those four payments, Your Honor, the first three and the last one all had specific instructions as to how those payments were to be applied. He says those would only inure to the company, not to Mr. Laird. So, I mean, assuming he says they were paid in cashier's check, I mean, I'm still going to say even assuming some of that's true, it's not Mr. Laird who gets anything. As an individual. The last $145,000, Your Honor, was paid personally by Mr. Laird. That proof is uncontradictive. Right. As far as the other checks, I do not know, Your Honor, because I didn't just didn't pay attention to that. Well, they said all of the $145,000 went to trust fund obligations. Yes, ma'am. So it seems to me it just boils down to the other payments, were they company checks or personal checks? Does it really matter, Your Honor, if, in fact, it can only be allocated to trust fund? They can't put it anywhere else because they had specific instructions as to where to put the money. They can't just say, okay, fine, we've got an extra $51,000. You told us how to allocate it, but we've decided 6402 overrules that. What do I do then, Your Honor, if, in fact, I have made a willful payment and told them how to allocate it? Under 2002-26, the IRS has said if you will pay the money and tell us how to allocate it, we will allocate it like that. The government doesn't have the option to allocate it any other way, Your Honor, regardless of 6402. Now, Jones, I think if you go back and look at Jones in 1946, having a pretty good report that 2002-26 didn't exist in 1946. So the Congress did not have to overrule 6402. The IRS did it for them. And they told us, if you will do this so that we can collect more money, we will follow your rules. If I, though, let's just say, for instance, going back to Margaret at first, Judge Jones files her 1040, and she's paid in $100,000. It turns out she only owes $80,000. So she's entitled to a $20,000 refund. But four or five years before, guess what you didn't do? You didn't pay all your taxes. And there's a $20,000 lien out there. The government can take that any way they want to. That is not a voluntary payment. That's an involuntary payment. And therefore, since it's an involuntary payment, they can keep it. But if I, if they want to have tax certainty under 2002-26, and they tell me pay it this way, and we will do this and thus, they've got to do that, Judge. What he wants is King's X. What you're carrying forward to is the refund process. Yes, ma'am. Well, the money, the $145,000 is all mixed up in this. Do you have any cases that support that? There's nothing out there, Your Honor. We've looked. That's the reason we're here. Okay. You guys are going to get to make some new law. 6402, overrule 2002-26. If so, you're creating a whole new body of law for those of us who've been relying on that for the last 17 years, and its predecessor. I'm not so sure the case is teed up for us to, you know, chart a new path. I'm not too sure about that. I'd like to just send you back to Judge Wingate with some instructions and let me have another go at it. It has a lot of interesting wrinkles. You know, there's a lot of departure points. Number one, the checks, cashiers versus drawing on personal company. Number two, if there's a right or remedy, is it the company or is it Mr. Laird or not? Number three, if there's a mistake, does it make any difference? I mean, there are a lot of nuances vis-a-vis there, but at any event, the argument's helpful, I think. But I don't know about any sea-change opinion for the IRS here. We're going to try to decide it based on what you provided or didn't. All right. Thank you, Mr. Thank you, Mr. Stewart. I do have one last question. If the company made those three payments that are in dispute, how does Laird personally get them back and not the company? Because it's all balled up into one thing, Your Honor. When we paid the $145,000, it creates a change in those prior three payments. It's all allocated to the trust fund. There's only so much trust fund that's owed, Your Honor. It can't be  is saying now is that since the trust fund numbers changed, partly as a result of the $145,000, we get to keep the excess. That's not how it works, Your Honor. Thank you. Thank you. Thank you so much.